**Opinion filed January 25, 2024**



## In The

# Eleventh Court of Appeals

_____

## No. 11-21-00255-CR

_____

## JEROME LOUIS NELSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 70th District Court**

**Ector County, Texas**

**Trial Court Cause No. A-18-1434-CR**

### M E M O R A N D U M   O P I N I O N

A grand jury indicted Appellant, Jerome Louis Nelson, for the murder of his girlfriend, Rochel Zuniga. *See* TEX. PENAL CODE ANN. § 19.02 (West Supp. 2023). Appellant entered a plea of not guilty and, after a jury trial, he was convicted of the charged offense. The jury assessed Appellant's punishment at life imprisonment in the Texas Department of Criminal Justice, Institutional Division, and the trial court sentenced Appellant accordingly.

Appellant raises three issues on appeal: (1) the evidence is insufficient to support Appellant's conviction for the charged offense and the jury's rejection of his claim of self-defense; (2) the trial court's judgment should be reformed to show that Appellant is only guilty of the lesser-included offense of manslaughter; and (3) Appellant's trial counsel was ineffective because counsel failed to present evidence during the punishment phase to support Appellant's "sudden passion" mitigation defense.[1]  We affirm.

## I. *Factual Background*

In the early morning hours of April 27, 2018, Appellant called 9-1-1 to report that he had accidentally shot and killed Zuniga.  When law enforcement arrived, the responding officers discovered Zuniga's body on a bedroom floor, lying near a bed with a shotgun across her body.  The responding officers observed that (1) Zuniga had sustained a single gunshot wound to her head, (2) Zuniga's index finger protruded oddly through the trigger guard of the shotgun, and (3) the shotgun appeared to be positioned in an unnatural manner.  The barrel of the shotgun was propped against the side of the bed and the shotgun's grip was stuffed under the bottom edge of Zuniga's shorts.  There were blood smears on the door frame of the bedroom where Zuniga was found, across the room from where officers discovered her body.  Zuniga's body also bore severe bruises all over her face, neck, and arms.

Appellant testified that he and Zuniga had lived together in their shared apartment for two years.  Appellant had previously been arrested and convicted for

---

[1]Appellant's first court-appointed appellate counsel submitted an *Anders* brief and filed a motion to withdraw.  *See Anders v. California*, 386 U.S. 738 (1967).  Following the procedures set forth in *Anders*, *Kelly v. State*, 436 S.W.3d 313 (Tex. Crim. App. 2014), and *In re Schulman*, 252 S.W.3d 403 (Tex. Crim. App. 2008), we independently reviewed the record and concluded that this appeal was not particularly amenable to disposition under *Anders*.  We granted appellate counsel's motion to withdraw, abated this appeal, and remanded this cause to the trial court with instructions to appoint other appellate counsel.  New appellate counsel was directed to file a brief on the merits and address any substantive issues that appellate counsel deemed to be arguable.  This appeal was reinstated after the trial court appointed new appellate counsel.

assault family violence against Zuniga. In that incident, Appellant called 9-1-1 after Zuniga and he had argued about a text message that he had received from his ex-wife. Appellant told police that Zuniga threatened him with a knife and that he responded by punching her. The responding officer for that incident testified that Zuniga had bruises and injuries on her face and neck, and that Zuniga told him Appellant had choked and beaten her. These injuries were consistent with and similar to the bruising observed on Zuniga's body after she was killed. The responding officer also testified that Appellant never claimed Zuniga threatened him with a knife or that Appellant struck Zuniga to defend himself. Appellant was arrested and ultimately pleaded guilty to the charge of assault family violence. In his statement to police, Appellant stated that Zuniga threatened herself with the knife, not him. Although the couple separated briefly after this incident, they reconciled and resumed cohabiting a few months later.

Appellant testified that on the day before he killed Zuniga, the couple traveled from Odessa to San Antonio to purchase cocaine; they returned to Odessa the same day, arriving around six o'clock in the evening. Upon their return, a friend, Jordan Deoge, joined them at their apartment and the trio consumed alcohol and used cocaine and methamphetamine. These activities carried on throughout the night and into the next day, when, at around noon, Appellant finally went to sleep in the bedroom that he shared with Zuniga.

According to Appellant, he was awakened when Zuniga slapped him in the face. He did not know how long he had been asleep before this happened. He testified that he sleeps in the nude and was nude when Zuniga slapped him. Appellant testified that after being slapped he saw Zuniga pointing a pistol in his face. She was upset about a text message that Appellant had sent to Doege in which he told Doege she was "good looking." Appellant testified that Zuniga was screaming and asking if he was going to leave her for Doege.

Appellant then grabbed the pistol from Zuniga's hand. She tried to grab it back and Appellant struck her with it. He testified that he "pistol-whipped" her, as hard as he could, approximately ten to fifteen times. Zuniga had Appellant's cell phone in the back pocket of her pants; after he ceased striking her with the pistol, she pulled his cell phone from her pants pocket to show him the text messages that he had sent to Doege. At some point, she returned Appellant's cell phone to her back pocket.

According to Appellant's testimony, after he had struck her with the pistol ten to fifteen times, Zuniga stopped trying to regain control of it and asked Appellant if he was trying to cheat on her and leave her. She then, according to Appellant, walked to the end of the bed, grabbed a shotgun that Appellant kept there, disengaged the safety, and started to raise the barrel. Appellant testified that, while this was happening, he pleaded with Zuniga not to shoot him. But, as she raised the shotgun barrel up, he pointed the pistol at her and fired, striking Zuniga in the head.

Appellant testified that he "blacked out" after shooting Zuniga and that he does not remember anything after that moment. He maintained that he did not touch Zuniga's body after he shot her. He believed that she was dead. Appellant testified that, although he did not believe he was high or intoxicated during his encounter with Zuniga, he admitted that he "had drugs in [his] system]," but the drugs did not make him "pistol-whip" Zuniga.

Later in the evening, Appellant awoke to a knock on his apartment door from a friend, Nathan Wells. Appellant told Wells what had occurred. He and Wells then left Appellant's apartment and went to Wells's RV.

Appellant gave Wells a spare key to his vehicle, a yellow Chevrolet Camaro, and returned to his apartment. Before arriving back at his apartment, Appellant stopped to purchase a T-shirt. He explained that he bought it because he believed

he would be incarcerated soon. Appellant testified that he was naked when he fought with and shot Zuniga and that he did not shower afterwards.

At his apartment, Appellant began cleaning out the apartment, and he put several of his personal belongings inside his vehicle. During this time, he retrieved his cell phone from the back pocket of Zuniga's pants. He testified that he did not move Zuniga's body and did not check to determine if she was alive or dead. Appellant admitted that although he "wouldn't know" if Zuniga was alive or dead and that he feared that she intended to shoot him, he did not move the shotgun away from her because he did not want to touch anything. Despite this, Appellant also admitted that he touched many things in the apartment as he packed up his personal belongings—including several firearms and abundant ammunition—in his vehicle and discarded the remaining drugs that he had in his possession. In fact, Appellant agreed that he "touched everything in that apartment but her." Appellant then moved his vehicle to a different location within the apartment complex and left the keys under the hood.

Appellant testified that he asked Wells to pick up his vehicle later. Appellant also made several phone calls and sent text messages to several people, including one message to his drug dealer in which he stated that he had "just committed murder" and was "going to prison." Appellant said he texted that message because the last time he had called the police he was arrested and convicted of an offense, and he assumed that this would happen again. This was, he opined, because he was a man and Zuniga was a woman. However, on cross-examination, Appellant said he texted this because he felt that he had committed murder.

After these events had transpired, which Appellant testified took "quite some time," Appellant called 9-1-1 at 2:00 a.m. to report Zuniga's death. He told the 9-1-1 operator that Zuniga was accidentally shot. Appellant testified that he lied to the dispatcher because he was afraid to report that he had shot her. Appellant

denied contaminating the scene in any way, such as by touching or moving Zuniga's body or by placing the shotgun in the position that it was discovered by law enforcement.

## II. *Standards of Review*

### A. *Sufficiency of the Evidence*

We review a challenge to the sufficiency of the evidence, regardless of whether it is framed as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Similarly, when a defendant challenges the sufficiency of the evidence to support the rejection of a defense raised by him, such as self-defense, we examine all of the evidence in the light most favorable to the verdict to determine whether a rational jury could have found the defendant guilty of all essential elements of the charged offense beyond a reasonable doubt and also could have found against the defendant on the self-defense issue beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991); *see also Braughton v. State*, 569 S.W.3d 592, 609 (Tex. Crim. App. 2018) (reaffirming *Saxton*).

To support a claim of self-defense, the defendant bears the burden to produce some evidence to support the claim; the State bears the burden of persuasion to disprove the raised defense. *Braughton*, 569 S.W.3d at 608 (citing *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003)); *Saxton*, 804 S.W.2d at 913–14. Once

the defendant produces that evidence, the State's burden does not require production of additional evidence to disprove the defense; instead, it requires only that the State prove its case beyond a reasonable doubt. *Barron v. State*, 630 S.W.3d 392, 403 (Tex. App.—Eastland 2021, pet. ref'd) (citing *Zuliani*, 97 S.W.3d at 594–95).

When a defendant raises a justification defense, such as self-defense, a determination of guilt by the jury is an implicit rejection of the defensive theory. *Zuliani*, 97 S.W.3d at 594–95; *Saxton*, 804 S.W.2d at 914. As such, because a claim of self-defense is a fact issue to be determined by the jury, the jury is free to accept or reject the defensive theory, either version of the facts, and any part of a witness's testimony. *Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018); *see Saxton*, 804 S.W.2d at 912 n.3.

Viewing the evidence in the light most favorable to the verdict requires that we consider all of the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. The *Jackson* standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732, *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, when the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326, *Merritt v. State*, 368 S.W.3d 516,

525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Because the standard of review is the same, we treat direct and circumstantial evidence equally. *Isassi*, 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13. It is not necessary that the evidence directly proves the defendant's guilt. Rather, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can, without more, be sufficient to establish his guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13). A guilty verdict does not require that every fact must directly and independently prove a defendant's guilt. *Hooper*, 214 S.W.3d at 13. Instead, the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.* Therefore, in evaluating the sufficiency of the evidence, we must consider the cumulative force of the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

B. *Ineffective Assistance of Counsel*

We review an ineffective-assistance-of-counsel claim under a two-part standard. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010). To succeed on a claim of ineffective assistance of counsel, Appellant must satisfy both prongs of the *Strickland* standard: performance and prejudice. *Strickland*, 466 U.S. at 687. First, Appellant must show that trial counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Perez*, 310 S.W.3d at 892–93. Second, Appellant must show that trial counsel's deficient performance prejudiced his defense, i.e., there is a reasonable probability that the result of his trial would have been different but for trial counsel's errors. *Id.* at 893; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland*, 466 U.S. at 687–88). A reasonable probability is a

probability that is sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694.

We assess trial counsel's performance in light of all of the circumstances and apply a strong presumption that counsel's representation fell within "the wide range of reasonable professional assistance." *Perez*, 310 S.W.3d at 893 (quoting *Strickland*, 466 U.S. at 688–89). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

III. *Analysis*

A. *The Murder and Appellant's Claim of Self-Defense*

In Appellant's first issue, he challenges the sufficiency of the evidence to support his conviction of the charged offense and the jury's rejection of his claim of self-defense. Appellant admits that he shot and killed Zuniga. Nevertheless, he contends that (1) evidence exists to support his claim of self-defense, and (2) his alleged belief that deadly force was immediately necessary should have been presumed reasonable under Section 9.32(b) of the Penal Code.

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual or he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. PENAL § 19.02(b)(1), (2). Here, the jury determined that Appellant committed the offense of murder, and there is sufficient evidence in the record for the jury to have found the essential elements of this offense beyond a reasonable doubt—Appellant freely admitted to intentionally shooting Zuniga with a pistol, which caused her death.

Under appropriate circumstances, a defendant may raise the claim of self-defense to justify his use of deadly force. *See Barron*, 630 S.W.3d at 403. As such, deadly force that is used in self-defense is a defense to a prosecution for murder if

9

that use of force is "justified." *Id.* at 403–04 (citing *Braughton*, 569 S.W.3d at 606). In asserting self-defense, the use of force is justified "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." PENAL § 9.31(a) (West 2019). Similarly, the use of *deadly* force against another is justified under the above circumstances "if the actor would be justified in using force against the other" under Section 9.31 and "when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force." *Id.* § 9.32(a). "'Deadly force' means force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id.* § 9.01(3). A "reasonable belief" is a belief that would be held by an ordinary and prudent person in the same circumstances as the actor. *Id.* § 1.07(a)(42). Under certain conditions, an actor's belief that deadly force was immediately necessary is presumed to be reasonable. *Id.* § 9.32(b). One condition of the presumption of reasonableness is that the actor was "not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used." *Id.* § 9.32(b)(3).

Appellant contends that the evidence is insufficient for a rational trier of fact to find against him on his claim of self-defense. In this case, the evidence that Appellant claims supports his theory of self-defense is derived primarily from his own statements. As such, his theory of self-defense was inherently a credibility determination for the jury to resolve. *See Barron*, 630 S.W.3d at 404. Because the credibility of Appellant's claim of self-defense was solely within the jury's province to determine, and because there is ample evidence to convict Appellant of the charged offense of murder, the jury was free to reject Appellant's defensive theory. *Id.* (citing *Saxton*, 804 S.W.2d at 914); *see also Braughton*, 569 S.W.3d at 611–13.

There is ample evidence to support the jury's rejection of Appellant's claim of self-defense. When Appellant called 9-1-1, he initially reported that he had accidentally shot Zuniga; he did not claim any form of self-defense justification until later during his prosecution. Inconsistent or untruthful statements may be considered by the jury as affirmative evidence of guilt. *See Gear v. State*, 340 S.W.3d 743, 747–48 (Tex. Crim. App. 2011); *Padilla v. State*, 326 S.W.3d 195, 201 (Tex. Crim. App. 2010). Although Appellant claimed that he did not stage or otherwise tamper with the evidence at the scene of the shooting, the responding law enforcement officers testified that the scene appeared unnatural and inconsistent with their prior experiences with investigating homicides or suicides—especially the positioning of the shotgun across Zuniga's body with the grip wedged under the hem of her shorts, the barrel propped against the bed, and her finger oddly draped through the trigger guard at a peculiar angle.

Appellant admitted that he did not check on Zuniga at any time to determine whether she had survived the gunshot wound to her head. Nor did he call for emergency assistance. Instead, Appellant testified that he "blacked out" for a period of time and, when he awoke, he left the apartment with a friend (leaving Zuniga's body unattended), shopped for clothing, returned to his apartment, and then proceeded to clean the apartment (during which he agreed that he touched "everything" in the apartment except Zuniga's body). He called and sent text messages to multiple people (including a message in which he stated that he had just committed a murder) and formulated a plan to ensure that his friend would look after his personal belongings (including several firearms and ammunition) that he had removed from the apartment and placed in his vehicle, which he then moved some distance away from the apartment unit. Only after all of this, many hours after he had allegedly awakened from "blacking out" after having shot and killed Zuniga, did

Appellant call 9-1-1, at 2:00 a.m. And during this 9-1-1 call, Appellant was untruthful about the cause of Zuniga's death.

Appellant's actions after he killed Zuniga constitutes evidence of guilt, or at least indicates a "consciousness of guilt," and supplied a sufficient basis for the jury to reject his claim of self-defense. *See Barron*, 630 S.W.3d at 405 (defendants' attempts to clean up and tamper with the crime scene after shooting two individuals whom they claimed were home intruders were not indicative of reasonable conduct and tended to show a consciousness of guilt) (citing *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000)); *see also Miller v. State*, 177 S.W.3d 177, 184 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (the defendant's actions of burying a gun and burning the clothes he was wearing supported the jury's rejection of self-defense); *Valdez v. State*, 841 S.W.2d 41, 43 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd) (the defendant's actions of hiding a gun and disposing of bullets supported the jury's rejection of self-defense).

Moreover, the evidence supports the jury's rejection of Appellant's argument that his actions were reasonable under the circumstances. *See Barron*, 630 S.W.3d at 404 (citing *Winfrey*, 393 S.W.3d at 767); *Clayton*, 235 S.W.3d at 778. Appellant committed his second assault family violence offense against Zuniga by repeatedly striking her with a pistol immediately prior to the murder. *See* PENAL § 22.01(b)(2)(A); *Villareal v. State*, 453 S.W.3d 429, 440 (Tex. Crim. App. 2015) (an assault by threat immediately prior to stabbing the victim precluded eligibility for the presumption of reasonableness). In addition, Appellant stated that he had purchased cocaine the day before, that he, Zuniga, and Doege used cocaine and methamphetamine all night, and that he disposed of the remaining drugs in his possession after he killed Zuniga. Possession of illegal narcotics, irrespective of the amount, qualifies as criminal activity. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.102(3)(D), (4) (West Supp. 2023) (identifying cocaine and methamphetamine

as controlled substances under Penalty Group 1); *id.* § 481.115 (creating an offense for the possession of a controlled substance under Penalty Group 1); *see Reyna v. State*, 597 S.W.3d 604, 606–07 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *Barrios v. State*, 389 S.W.3d 382, 393 (Tex. App.—Texarkana 2012, pet. ref'd) ("Thus, criminal activity can be broadly construed to comport with the generally understood concept that it would encompass any activity that constitutes a crime."). Therefore, Appellant's admission that he was in possession of illegal drugs at the time he used deadly force against Zuniga rebuts the presumption that his use of deadly force was reasonable under the circumstances (even assuming *arguendo* that the other requirements of Section 9.32(b) were met). *See Barron*, 630 S.W.3d at 405; *Reyna*, 597 S.W.3d at 606–07.

Although Appellant contends that evidence was presented to support his claim of self-defense, the jury was not required to accept Appellant's claim of self-defense and version of events as true. *See Barron*, 630 S.W.3d at 404–05 ("the statements of Appellant and his witnesses do not conclusively prove a claim of self-defense.") (citing *Smith v. State*, 355 S.W.3d 138, 146 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd)); *see also Braughton*, 569 S.W.3d at 609. Rather, the jury was free to judge the credibility and weight of all of the evidence presented. *See Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. From the evidence presented at trial, a rational jury could have found that Appellant's use of force was neither reasonable nor justified. Indeed, the jury was entitled to reject and disbelieve all or portions of Appellant's version of events, particularly in light of his inconsistent statements and suspicious actions and conduct immediately following Zuniga's death, including but not limited to: (1) the prolonged delay in calling 9-1-1, (2) Appellant cleaning out his apartment, (3) Appellant's text message stating that he had committed a murder, (4) the strange positioning of the shotgun across Zuniga's body and of her index

finger through the trigger guard, and (5) his prior history of physical violence against Zuniga.

In the absence of evidence in the record indicating that the jury was irrational in their rejection of Appellant's claim of self-defense, we decline to substitute our view of the witnesses' credibility for that of the jury. *See Barron*, 630 S.W.3d at 405 (citing *Saxton*, 804 S.W.2d at 914). Here, the jury's determination of Appellant's guilt is tantamount to a rejection of his claim of self-defense, and the jury was free to reject this defense and Appellant's version of events. *Id.* (citing *Braughton*, 569 S.W.3d at 609); *see Febus*, 542 S.W.3d at 572.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the State adduced sufficient evidence from which a rational trier of fact could have found, beyond a reasonable doubt, all of the essential elements of murder and also could have found against Appellant on his claim of self-defense. Accordingly, we overrule Appellant's first issue.

B. *Appellant's Request to Reform the Judgment*

In his second issue, Appellant contends that the trial court's judgment should be reformed to show that Appellant is only guilty of the lesser-included offense of manslaughter. *See* TEX. CODE CRIM. PROC art. 37.09 (West 2006); *Bowen v. State*, 374 S.W.3d 427 (Tex. Crim. App. 2012) (holding that the reformation of a criminal conviction on appeal is permissible, regardless of whether an instruction on a lesser-included offense was requested). In essence, Appellant's complaint is a challenge to the sufficiency of the evidence to establish that Appellant possessed the culpable mental state that is required to convict him of murder when he shot Zuniga because the only difference between murder—as charged in the indictment—and the statutory elements of manslaughter is the required culpable mental state.[2] *See*

---

[2]Appellant did not request the submission of a lesser-included-offense instruction and does not contend on appeal that the absence of such an instruction was error.

14

*Cavazos v. State*, 382 S.W.3d 377, 382–84 (Tex. Crim. App. 2012) (concluding that manslaughter is a lesser included offense to murder because the only difference between the offenses is the required culpable mental state—"intent" versus "recklessness.").

An offense is a lesser-included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

CRIM. PROC. art. 37.09; *see Ritcherson v. State*, 568 S.W.3d 667, 670 (Tex. Crim. App. 2018).

As relevant to these circumstances, a person commits the offense of murder if the person (1) intentionally or knowingly causes the death of an individual, or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. PENAL § 19.02(b)(1), (2). A person commits the offense of manslaughter if he recklessly causes the death of an individual. *Id.* § 19.04(a). A person acts recklessly with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or that the result will occur. *Id.* § 6.03(c) (West 2021).

The indictment in this case charged Appellant with murder and felony murder, namely, that Appellant (1) "did then and there intentionally and knowingly cause the death of an individual, namely, Rochel Zuniga, by shooting her with a deadly weapon, to wit: a firearm" and (2) "did then and there, intending to cause serious bodily injury to Rochel Zuniga, intentionally and knowingly commit an act clearly dangerous to human life, namely shooting her with a deadly weapon, to wit: a firearm, which caused the death of the said Rochel Zuniga." *See id.* § 19.02(b)(1), (2). The jury convicted Appellant of murder as charged in the indictment.

Manslaughter is a lesser-included offense of murder. *Cavazos*, 382 S.W.3d at 383–84 ("We conclude that causing death while consciously disregarding a risk that death will occur differs from intending to cause serious bodily injury with a resulting death only in the respect that a less culpable mental state establishes its commission.") (citing CRIM. PROC. art. 37.09(3)). Nevertheless, we conclude that the trial court's judgment should not be reformed here because the evidence is sufficient to support Appellant's conviction for murder. *Thornton v. State*, 425 S.W.3d 289, 299–300 (Tex. Crim. App. 2014).

Before we determine whether we should reform a judgment of a criminal conviction to show a conviction for a lesser-included offense, we must first ascertain whether the evidence is insufficient to support the conviction for the greater offense. *Id.* at 299–300. Upon such a determination, reformation of the judgment of conviction is required if (1) in the course of convicting the appellant of the greater offense, the factfinder necessarily found every element of the lesser-included offense, and (2) pursuant to an evidentiary sufficiency analysis conducted as though the appellant had been convicted of the lesser-included offense at trial, there is sufficient evidence to support a conviction for that offense. *See Denny v. State*, 630 S.W.3d 253, 259–60 (Tex. App.—Eastland 2020, pet. ref'd) (citing *Thornton*, 425 S.W.3d at 299–300). If we determine that both requirements are met, we are

required to reform the judgment of conviction, so as to avoid the unjust result of an outright acquittal, which would usurp the factfinder's determination of guilt. *See Thornton*, 425 S.W.3d at 298–300. If either requirement is not met, we lack the authority to reform the judgment. *Id.* at 300.

We have already determined that sufficient evidence exists to support Appellant's conviction for murder. With regard to the question of Appellant's culpable mental state specifically, we conclude that the evidence is sufficient to support the jury's determination that Appellant intended to kill Zuniga when he shot her. For example, after killing Zuniga but before calling the police, Appellant sent a text message characterizing his actions as "murder." His testimony reaffirms that he intended to shoot Zuniga. For his intentional shooting of Zuniga, Appellant offered the justification of self-defense. As implied by its verdict, the jury did not credit Appellant's evidence to support his claim of self-defense. Here, the evidence is sufficient to support the jury's determination that Appellant intentionally shot and killed Zuniga. Moreover, the evidence of Appellant's culpable mental state does not support a finding that, if he is guilty, he is only guilty of manslaughter—Appellant's conduct was intentional, not reckless. *See Cavazos*, 382 S.W.3d at 385 ("There was no evidence directly germane to recklessness. . . . The evidence here does not support a finding of recklessness and does not rise to [a] level that would convince a rational jury to find that if Appellant is guilty, he is guilty of only the lesser-included offense.").

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the evidence (1) is sufficient to support Appellant's conviction for murder and (2) does not support Appellant's contention that the judgment should be reformed to show a conviction for the lesser-included offense of manslaughter. Accordingly, we overrule Appellant's second issue.

C. *Ineffective Assistance of Counsel*

In his third issue, Appellant complains that his trial counsel rendered ineffective assistance because counsel failed to raise the issue of "sudden passion"[3] at the punishment phase of trial.[4]

Although Appellant filed a motion for new trial, requested a hearing, and a hearing was set on the motion, no hearing was held on his motion, nor was Appellant's trial counsel otherwise provided with an opportunity to explain his decision not to raise the issue of sudden passion at the punishment phase. Because the record is insufficient to demonstrate that Appellant's trial counsel rendered ineffective assistance, we must overrule Appellant's third issue. *Strickland*, 466 U.S. at 700.

To prevail on an ineffective-assistance-of-counsel claim, Appellant must establish that (1) his trial counsel rendered deficient performance in that it fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced his defense. *Id.* at 687–88; *Perez*, 310 S.W.3d at 893.

Appellate review of the first element—trial counsel's representation—is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance. *Thompson*, 9 S.W.3d at 812–14. To

---

[3]"'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." PENAL § 19.02(a)(2). At the punishment phase of trial, a defendant convicted of murder may raise the issue as to whether he caused the death of an individual while under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the punishment for the charged offense is reduced to a second-degree felony range. *Id.* § 19.02(d); *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005).

[4]As the State notes, Appellant frames his ineffective assistance claim as his trial counsel's failure to "present[] . . . evidence of sudden passion." However, he also argues that trial counsel should have requested a sudden passion instruction. Noting that evidence of self-defense and evidence of sudden passion are often so similar that it is a "rare instance when issues of self-defense do not also raise issues of sudden passion," we do not find that the record supports his claim for ineffective assistance of counsel. *See Benavides v. State*, 992 S.W.2d 511, 525 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd).

overcome the presumption of effective professional assistance, an appellant's claim must be firmly grounded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* at 814. Ordinarily, trial counsel should be afforded an opportunity to explain his actions before being denounced as ineffective. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Appellant's trial counsel received no such opportunity here. If trial counsel did not have an opportunity to explain the challenged actions, we will not conclude that those actions constituted deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

Moreover, to establish the second element of the claim—that counsel's flawed representation prejudiced the defense—the record must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland*, 466 U.S. at 687; *Ex parte Rogers*, 369 S.W.3d 858, 862–63 (Tex. Crim. App. 2012).

It is well-settled that the record on direct appeal generally will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). This is because the record will rarely be developed sufficiently to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *Mata*, 226 S.W.3d at 430. "[T]he record must affirmatively demonstrate trial counsel's alleged ineffectiveness." *Id.* Therefore, if counsel's reasons or explanations for his conduct do not appear in the record and there is at least the possibility that the conduct could have been grounded in

legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective-assistance-of-counsel claim that is raised, such as in this case, on direct appeal. *Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 813–14.

Appellant contends that the record and circumstances here constitute an instance "when no reasonable trial strategy could justify the trial counsel's conduct" such that "counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as he did." *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005) (holding that there can be no reasonable trial strategy in failing to correct a misstatement of law that is detrimental to the client) (citing *Strickland*, 466 U.S. at 694). By failing to request a punishment instruction on sudden passion, Appellant argues that his trial counsel essentially allowed the jury to assess Appellant's punishment within the punishment range for first-degree felonies—five to ninety-nine years' imprisonment or life imprisonment—when a request for a sudden-passion instruction could have presented the jury with the option to assess Appellant's punishment within the range for second-degree felonies—two to twenty years' imprisonment. *See* PENAL §§ 12.32(a), 12.33(a); 19.02(d).

It cannot be accurately determined whether the jury in this case would have found that Appellant acted under the influence of sudden passion, Appellant reasons, because jury deliberations are secret, confidential, and not included in the record. The jury had no option other than to sentence Appellant to some term permitted by the punishment range for a first-degree felony conviction, which, Appellant asserts, shows a reasonable probability that but for his trial counsel's alleged errors, the result of the punishment phase would have been different. We disagree.

Appellant relies on *Andrews* to support his argument; however, the case before us is distinguishable from *Andrews*, in which the appellant's ineffective-assistance-of-counsel claim was successful on direct appeal despite the lack of a motion for new trial that would have provided defense trial counsel an opportunity to explain his trial strategy and related decisions. *See Andrews*, 159 S.W.3d at 103 ("Under the extremely unusual circumstances of this case, the record contains all the information that we need to make a decision. Trial counsel failed to object to the prosecutor's misstatement of the law regarding whether the appellant's sentences should be stacked, even though he knew that the State had filed a motion to cumulate the sentences. There can be no reasonable trial strategy in failing to correct this false impression that was harmful to the appellant.").

Rather, and contrary to Appellant's assertions, the record in this appeal is insufficient to overcome the presumption that his trial counsel's conduct was reasonable. Appellant, as the only surviving eyewitness to the incident, testified about the circumstances of shooting Zuniga in support of his claim of self-defense. This same evidence (Appellant's testimony) also would have constituted the primary evidence to support Appellant's argument that a sudden passion instruction should have been requested. Appellant testified and had the opportunity to espouse as to what he claims constitutes his "sudden passion" conduct. Perhaps Appellant's trial counsel could have called additional witnesses to testify regarding some aspect of Appellant's character or his relationship with Zuniga, as tangential evidence of his sudden passion in shooting her. But any such considerations would fall within the wide range of reasonable professional assistance from which trial counsel may formulate his trial strategy. As such, we cannot say that trial counsel's actions here constitute deficient performance.

Similarly, trial counsel's choice not to request a sudden-passion instruction is a reasonable, strategic decision. *See, e.g., Carter v. State*, 506 S.W.3d 529, 540–41

(Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (trial counsel's choice not to seek out and introduce additional evidence that would require witness testimony and expose witnesses to cross-examination was not objectively unreasonable and did not deprive appellant of effective assistance of counsel); *Humphrey v. State*, 501 S.W.3d 656, 664 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (citing *Wiggins v. State*, 539 U.S. 510, 534 (2003)) (the focus on direct responsibility rather than a mitigation argument at the punishment phase may be strategically defensible).

Consequently, because the record is not sufficiently developed to affirmatively demonstrate that Appellant's trial counsel had no reasonable strategic basis for his decisions, and Appellant's trial counsel was not provided an opportunity to explain his decisions and trial strategy, we cannot conclude that his actions and decisions lacked any reasonable strategic basis. *See Strickland*, 466 U.S. at 687; *Mata*, 226 S.W.3d at 430. Accordingly, we overrule Appellant's third issue.

IV. *This Court's Ruling*

We affirm the judgment of the trial court.

W. STACY TROTTER
JUSTICE

January 25, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.